IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-149-FL

| | |
|---|---|
| ROGER DENT and DAVID HAMILTON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| MARK GREGORY ROOFING ) | |
| COMPANY, INC. and MARK GREGORY, ) | ORDER |
| ) | |
| Defendants. ) | |
| ) | |
| SHERRY JOHNSON and CONNIE ) | |
| STANCIL, ) | |
| ) | |
| Interested Parties.[1] ) | |

This matter is before the court on defendants' motion for partial summary judgment (DE 44) and plaintiffs' motion for partial summary judgment (DE 48), pursuant to Federal Rule of Civil Procedure 56. The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, the motions are granted in part and denied in part as forth herein.

## STATEMENT OF THE CASE

Plaintiffs commenced this action on April 15, 2019, under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") and the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, et seq. ("NCWHA"), alleging that defendant Mark Gregory Roofing Company ("MGRC"), and its president, defendant Mark Gregory, failed to pay overtime compensation and

---

[1] The court constructively amends its case caption to reflect addition of interested party Connie Stancil who appeared in the instant action on July 7, 2020.

pay all wages earned. Plaintiffs seek damages for unpaid wages and overtime compensation, as well as liquidated damages, costs, interest, attorneys' fees, and declaratory relief.

After the deadline for amending the pleadings expired, plaintiffs moved to join defendant Mark Gregory's wife, Jenny Gregory, as a defendant in the instant action, which the court denied. Following an extended period of discovery, defendants filed the instant motion for partial summary judgment on plaintiff David Hamilton's ("Hamilton") claims, relying upon a memorandum of law, statement of material facts, and an appendix thereto, including: 1) excerpts of depositions of Jenny Gregory, plaintiff Hamilton, defendant Mark Gregory, and plaintiff Roger Dent ("Dent"); 2) plaintiff Hamilton's time records and paystubs; 3) affidavit of Anthony Crenshaw ("Crenshaw"), former employee of defendant MGRC; and 4) declaration of Nicki Burnett ("Burnett"), another former employee of defendant MGRC.

Shortly thereafter, on July 31, 2020, plaintiffs filed the instant motion for partial summary judgment on this issue of liability, but not damages. In support, plaintiffs rely upon a memorandum of law, statement of material facts, and appendix thereto, including: 1) excerpts of depositions of defendant Mark Gregory, Jenny Gregory, and Connie Stancil ("Stancil"); 2) declarations of plaintiffs; and 3) plaintiff Dent's payroll records.

In their August 11, 2020, opposition to defendants' motion, plaintiffs rely upon a memorandum of law, an opposing statement of material facts, and an appendix thereto, including: 1) excerpts of depositions of defendant Mark Gregory, Jenny Gregory, plaintiffs, and Stancil; 2) declarations of plaintiffs; and 3) plaintiff Dent's payroll records.

In their August 21, 2020, opposition to plaintiffs' motion, defendant rely upon a memorandum of law, an opposing statement of material facts, and appendix thereto, include: excerpts of depositions of Jenny Gregory, defendant Mark Gregory, and plaintiffs; 2) plaintiffs'

time records and paystubs; 3) affidavit of Crenshaw; 4) declaration of Burnett; 5) affidavit of defendant Mark Gregory; and 6) copy of complaint filed in Dent et al v. Gregory, 4:20-CV-141-BR, (E.D.N.C. July 21, 2020) (hereinafter "Dent II, No. 4:20-CV-141-BR").[2]

On August 25, 2020, defendants replied in support of their motion and also filed a supplemental statement of material facts, and a supplemental appendix, including: 1) additional deposition excerpts; 2) affidavits of Jenny Gregory and defendant Mark Gregory; and 3) copy of complaint filed in Dent II, No. 4:20-CV-141-BR. Plaintiffs replied in support of their motion of September 4, 2020.

### STATEMENT OF FACTS

The undisputed facts may be summarized as follows. Defendant MGRC is a full-service roofing company handling initial installations and maintenance of all types of roofing. (Def. Opp. Stmt. (DE 57) ¶ 1).[3] Defendant Mark Gregory, and his wife Jenny Gregory (collectively "the Gregorys"), co-own defendant MGRC. (Id. ¶¶ 2-3). In addition to serving as defendant MGRC's president, defendant Mark Gregory functions as its general manager and exercises operation control, including : 1) hiring, firing, and employee discipline, 2) employee schedules, 3) employee supervision and direction of job duties, 4) employee wages and benefits, 5) company employment policies and procedures, and 6) review of employee timesheets and adjustments. (Id. ¶¶ 2,4). Jenny Gregory serves as defendant MGRC's secretary and treasurer, and she is responsible for the payroll. (Id. ¶ 5).

---

[2]     In Dent II, No. 4:20-CV-141-BR, the plaintiffs herein filed complaint against Jenny Gregory. On July 22, 2020, Dent II, No. 4:20-CV-141-BR was redesignated as No. 5:20-CV-395-BR, and subsequently redesignated as 5:20-CV-395-FL.

[3]     Where a fact asserted in a party's statement of material facts is undisputed, the court cites to the opposing party's responsive statement of facts, where it indicates the fact is admitted or undisputed or without opposing fact.

3

Plaintiffs formerly worked at defendant MGRC as sheet metal workers and roofers, and were responsible for general labor associated with the installation and maintenance of commercial and residential roofing projects. (Id. ¶¶ 6-7). Plaintiffs worked on weekdays, not weekends, and their workdays typically started around 7:00 a.m., although occasionally defendant Mark Gregory asked plaintiffs to begin working later in the day to adapt to weather conditions. (Id. ¶ 9). Plaintiffs were required to provide an accounting of their work hours each day by filling out paper timesheets. (Id. ¶ 16).

The Gregorys reviewed the timesheets for completeness and accuracy, and they would notify plaintiffs if any information was missing or incorrect. (Id. ¶ 19). When they deemed it warranted, defendant Mark Gregory and Jenny Gregory made adjustments in writing to plaintiffs' hours on the paper timesheets. (Id. ¶ 20). After any adjustments were made, Jenny Gregory entered plaintiffs' work hours into the defendant MGRC's payroll software, known as QuickBooks. (Id. ¶ 25). QuickBooks would generate reports showing plaintiffs' post-adjustment work hours, as well as plaintiffs' paychecks. (Id.).

Jenny Gregory did not note in QuickBooks the amount of any adjustments or the reason for the same. (Mark Gregory Dep. (DE 52-1) 124:23-125:8); Jenny Gregory Dep. (DE 52-2) 68:1-69:3). The Gregorys burned plaintiffs' 2016, 2017, and 2018 paper timesheets. (Jenny Gregory Dep. (DE 52-2) 69:1-11); Mark Gregory Dep. (DE 52-1) 125:2-13, 130:6-24).

## COURT'S DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When faced with cross-motions for summary judgment, the court must review each

motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).[4]  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor."  Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the

---

[4]        Internal citations and quotation marks are omitted from all citations in this order unless otherwise specified.

necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.     Analysis

1.     Improper Lunch Deductions

As an initial matter, the court must address whether plaintiffs may proceed on the theory that defendants improperly deducted 30 minute lunch breaks from plaintiffs' work hours, where plaintiffs did not allege this theory of recovery in their complaint and did not seek leave to amend to incorporate such allegations.[5]

The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). A properly pleaded complaint provides to an opponent "illumination as to the substantive theory under which [plaintiffs] [are] proceeding, which is the function of the pleadings under the Federal Rules." Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 717 (4th Cir. 1983) (quoting Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 66 (1978)).

---

[5]      Although plaintiffs moved to amend complaint on May 19, 2020, they did not seek amendment for purposes of alleging improper lunch deductions. (See Prop. Am. Compl. (DE 31-1)).

Accordingly, a case may not proceed on "an unpleaded theory of recovery" without "express or implied consent of the parties." Pinkley, Inc. v. City of Frederick, Md., 191 F.3d 394, 401 (4th Cir. 1999); McLeod v. Stevens, 617 F.2d 1038, 1040 (4th Cir.1980). Further, "a court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim." Quillen v. Int'l Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir. 1986). Rather, a party must amend the complaint, or the parties must "constructively amend the complaint" by, for example, "agreeing . . . to litigate fully an issue not raised in the original pleadings," or by addressing a theory of liability "in their summary judgment briefs." Interstate Petroleum Corp. v. Morgan, 249 F.3d 215, 227 (4th Cir. 2001); see also Whitaker v. T.J. Snow Co., 151 F.3d 661, 663 (7th Cir. 1998) (explaining that "[b]ecause both parties squarely addressed the strict liability theory in their summary judgment briefs, the complaint was constructively amended to include that claim").

Here, defendants have not implicitly consented to amendment of plaintiffs' complaint to incorporate the theory of improper lunch break deductions, but, rather, have challenged this theory as improperly pleaded. Although the United States Court of Appeals for the Fourth Circuit has not addressed this issue in a published opinion, two district courts have held that that plaintiffs must plead each theory of recovery it seeks to pursue under the FLSA. See Arnold v. State of Ark., 910 F. Supp. 1385, 1390 (E.D. Ark. 1995) (holding that plaintiffs could not amend their complaint to add four new bases for recovery under the FLSA at the summary judgment stage); Glass v. Nestle USA, Inc., No. CV 04-604-S-BLW, 2005 WL 8164928, at *9 (D. Idaho Dec. 15, 2005) (rejecting plaintiff's argument that, since he was seeking damages for unpaid overtime in general, his unpleaded theories of recovery based upon unpaid travel time, docked lunch periods, and time clock errors were viable at the summary judgment stage).

Where the weight of authority holds that a party must plead each theory of recovery it seeks to pursue under the FLSA, and where plaintiffs did not plead the improper lunch deduction theory, nor did plaintiffs seek leave to amend, plaintiffs may not pursue this theory of recovery during this late stage of the proceedings. Therefore, defendants' motion for partial summary judgment is granted in this part, and plaintiffs' motion for partial summary judgment is denied in this part.

2. Spoilation

Plaintiffs seek sanctions against defendants based on defendants' alleged spoilation of evidence and request that the court "take whatever action it deems necessary to address this intention abuse of the judicial process." (Mem. (DE 49) at 12).

"Spoilation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001). "The imposition of a sanction (e.g., an adverse inference) for spoilation of evidence is an inherent power of federal courts— though one limited to that action necessary to redress conduct which abuses the judicial process." Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 449 (4th Cir. 2004).

However, a sanction for spoliation "cannot be drawn merely from [a party's] negligent loss or destruction of evidence." Id. at 450. "[T]he conduct must be intentional," and "the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction." Turner v. United States, 736 F.3d 274, 282 (4th Cir. 2013).

In addition, a "party seeking sanctions based on the spoliation of evidence must establish, inter alia, that the alleged spoliator had a duty to preserve material evidence." Id. "The duty to preserve material evidence arises . . . during litigation" and it "extends to that period before the

litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." Id. "Generally, it is the filing of a lawsuit that triggers the duty to preserve evidence." Id.

Here, it is undisputed that defendants burned plaintiffs' 2016, 2017, and 2018, paper timesheets. (Mark Gregory Dep. (DE 52-1) 129:19-130:24); (Jenny Gregory Dep. (DE 52-2) 48:7-51:20). Plaintiffs filled out these paper timesheets contemporaneously as they worked, and the timesheets reflected plaintiffs' start times, stop times, and any breaks taken during the interim. (Def. Opp. Stmt. (DE 57) ¶¶ 16-17). Although defendants retained plaintiffs' work hours electronically, Jenny Gregory and defendant Mark Gregory made adjustments to plaintiffs' hours before entering them into the computer, when they deemed it warranted.[6] (Id. ¶ 20). Accordingly, defendants' electronic retention of plaintiffs' hours did not preserve the exact information contained in the paper timesheets. Compare (Timesheets (DE 52-5) at 4-8) with (Paystub (DE 52-5) at 1-3).

The parties dispute when the Gregorys burned plaintiffs' paper timesheets. According to defendant Mark Gregory, the timesheets were burned well in advance of this lawsuit, because he remembers plaintiff Dent complaining about the smoke while he was still an employee. (Mark Gregory Dep. (DE 52-1) 131:16-24). Likewise, Jenny Gregory claims that she burned the timesheets in February or March of 2019, after her CPA, Stancil, told her that she did not need them because "they were in the computer" (see Jenny Gregory Dep. (DE 52-2) 48:18-49:24), which was before the Gregorys received notice of the instant action on April 24, 2019.

In contrast, plaintiffs claim that the Gregorys burned the paper timesheets in January 2020. In support, plaintiffs rely on Stancil's testimony that, although she never told Jenny Gregory she

---

[6]     The parties dispute the basis for the adjustments.

could destroy the timesheets because they were in the computer, she did recall Jenny Gregory starting a conversation with her in January 2020 about timesheets. (Stancil Dep. (DE 52-10) 29:19-30:2). During that conversation, Stancil informed Jenny Gregory that "some businesses don't have paper timecards when the employee logs in and logs out through the computer. And in that case, there are no payroll records", but Stancil did not "recall the direct words that were said in regards to that." (Id. 29:19-30:2). Plaintiffs argue that the Gregorys burned the timesheets shortly after this conversation took place.

In light of the foregoing, there is a genuine dispute of fact as to when the paper timesheets were burned, and thus, whether the Gregorys had a duty to preserve evidence at that time. This factual dispute precludes the court from determining at this juncture whether defendants engaged in spoilation of evidence. Therefore, that part of plaintiffs' motion for summary judgment on the issue of spoilation is denied.

3.      Employer Status

Plaintiffs' motion for partial summary judgment raises the issue of employer status. Parties "seeking compensation under the [FLSA] bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act." Benshoff v. City of Virginia Beach, 180 F.3d 136, 140 (4th Cir. 1999) (citing Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir.1986)). An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To "employ" means "to suffer or permit to work." Id. at § 203(g). [7]

Although the Fourth Circuit has not expressly listed all factors that might bear on whether an individual defendant is an "employer" under the FLSA, district courts within the circuit,

---

[7]      It is undisputed that plaintiffs are "employees." (Compl. (DE 1) ¶ 21); (Ans. (DE 15) ¶ 21).

including this one in the instant case, previously have enumerated certain factors based upon a survey of federal case law. These include whether the individual defendant "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Garcia v. Frog Island Seafood, Inc., 644 F. Supp. 2d 696, 721 (E.D.N.C. 2009).

Further factors may include whether the individual has "extensive managerial responsibilities," or "the person's job description," or "his or her financial interest in the enterprise." Lima v. Stanley, No. 5:14-CV-896-FL, 2015 WL 4769546, at *6 (E.D.N.C. Aug. 12, 2015); see Kelly v. Hosp. Ventures LLC, No. 5:17-CV-98-FL, 2017 WL 3880318, at *5 (E.D.N.C. Sept. 5, 2017). Behind each such factor, the key is whether "the individual [defendant] has sufficient operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages." Garcia, 644 F. Supp. 2d at 720. [8]

Here, plaintiffs have brought forth sufficient evidence to establish that defendant Mark Gregory is an "employer" under the FLSA. He exercises significant operational control, including: 1) hiring and firing employees, 2) disciplining employees, 3) controlling employee schedules, 4) supervising employees, 5) managing employee wages and benefits, 6) implementing employment policies and procedures, and 7) reviewing employee timesheets and making adjustments when warranted. (Def. Opp. Stmt. (DE 57) ¶ 4). In addition, he is the majority shareholder, and thus, has a financial interest in defendant MGRC. (Id. ¶ 2).

---

[8]     Because the definition of employer in the NCWHA is identical to that used in the FLSA, see N.C. Gen. Stat. § 95-25.2(5), the court's analysis of whether defendant Mark Gregory is an employer under for purposes of plaintiffs' NCWHA claims is the same, for purposes of the instant motion, as that expressed in the text above under the FLSA. See Garcia, 644 F. Supp. 2d at 720 n.28.

11

Defendants have not brought forth any evidence showing that there is a genuine dispute as to defendant Mark Gregory's employer status.[9] Accordingly, the court finds that defendant Mark Gregory is an employer within the meaning of the FLSA, and plaintiffs' motion for partial summary judgment is granted in this part.

### 4. FLSA Overtime Claims

Defendants move for summary judgment on plaintiff Hamilton's FLSA overtime claim, and plaintiffs move for summary judgment on defendants' liability on their FLSA overtime claims. The FLSA mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Under the FLSA, employers are required to keep records of wages and hours. 29 U.S.C. § 211(c). "But where [a]n employer's records are inaccurate or inadequate", an employee establishes a claim for unpaid overtime wages by proving: 1) he worked overtime hours without compensation, 2) the amount and extent of his overtime work as a matter of just and reasonable inference, and 3) his employer had knowledge, either actual or constructive, of his overtime work. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946); Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986); see also Talton v. I.H. Caffey Distrib. Co., 124 F. App'x 760, 763 (4th Cir. 2005).

Once the employee establishes a prima case, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative

---

[9] In defendants' answer, defendants deny that defendant Mark Gregory is an employer, and "plead the corporate existence of the corporate Defendant as a bar to recovery against the individual Defendant in his personal capacity." (Answer (DE 15) ¶ 13). However, individuals who act "directly or indirectly in the interests of an employer in relation to any employee" are liable as employers, "even if the businesses [are] within a corporate structure." Brock v. Hamad, 867 F.2d 804, 809 n.6 (4th Cir. 1989); see also Miller v. Colorcraft Printing Co., No. 3:03 CV 51-T, 2003 WL 22717592, at *3 (W.D.N.C. Oct. 16, 2003) ("Individuals may be held liable as 'employers' even without 'piercing the corporate veil.'").

the reasonableness of the inference to be drawn from the employee's evidence." Mt. Clemens, 328 U.S. at 687–88. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Id. at 688.

Here, plaintiffs have put forth sufficient evidence to establish a prima facie case for unpaid overtime wages. In sworn declaration, plaintiff Hamilton estimates that he "worked approximately 50-hour work weeks in most weeks in 2016 and 2017 until [his] workplace injury in October 2017." (Hamilton Decl. (DE 52-4) ¶ 4). Likewise, plaintiff Dent avers that he "worked approximately 50-hour work weeks in most weeks in 2016, 2017, until about November 2018." (Dent Decl. (DE 52-3) ¶ 5). According to plaintiffs, Jenny Gregory told them that defendant MGRC did not pay overtime; instead, defendant MGRC would take any overtime hours they worked in a week from their paychecks to "bank" for later pay periods that were low on hours due to inclement weather. The "banked" hours were to be paid back in subsequent paychecks on a "dollar-for-dollar basis" at their regular hourly rate. (Dent Decl. (DE 52-3) ¶ 6); (Hamilton Decl. (DE 52-4) ¶ 5).

In the Fourth Circuit, plaintiffs' estimations, offered in sworn statements, are sufficient to show the extent of their overtime work by reasonable and just inference. See Wirtz v. Durham Sandwich Co., 367 F.2d 810, 812 (4th Cir. 1966) (affirming damages award in favor of plaintiff when extent of damages were based solely on plaintiff's testimony); Alston v. DIRECTV, Inc., 254 F. Supp. 3d 765, 789 (D.S.C. 2017) ("[A]n FLSA plaintiff's estimations offered in sworn statements as to the amount of improperly compensated work is, alone, sufficient to meet his initial burden under the Mt. Clemens framework, even if the estimation is imprecise."); Donovan v.

13

Kentwood Dev. Co., 549 F. Supp. 480, 485 (D. Md. 1982) ("A prima facie case can be made through an employee's testimony giving his recollection of hours worked."). [10]

Defendants challenge plaintiff Hamilton's estimation that he worked 50 hours or more per week, in light of plaintiff Hamilton's workers' compensation settlement agreement, wherein he stipulated to earning approximately $777.18 per week. (Settlement Agreement (DE 47-9) at 4). According to defendants, this stipulation amounts to an admission that plaintiff Hamilton worked 38 hours per week. Importantly, Federal Rule of Evidence 408 provides that evidence of "a statement made during compromise negotiations about [a] claim" is "not admissible . . . either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408. As explained by the advisory committee, such "evidence is irrelevant because the offer may be motivated by a desire for peace rather than from any concession of weakness of position." Fed. R. Evid. 408 advisory committee's note to 1972 amendment. Moreover, "[t]he public policy of favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank discussions." Fiberglass Insulators, Inc. v. Dupuy, 856 F.2d 652, 654 (4th Cir. 1988).

Since plaintiff Hamilton's statement was made during compromise negotiations, it is inadmissible to prove or disprove the validity or amount of his FLSA claim, notwithstanding the fact that it was made during a workers' compensation proceeding. See Fiberglass Insulators, 856 F.2d at 654 ("[T]he spectre of a subsequent use [of settlement negotiations] to prejudice a separate and discrete claim is a disincentive which Rule 408 seeks to prevent."); see also Hudspeth v. Comm'r of Internal Revenue Serv., 914 F.2d 1207, 1213 (9th Cir.1990) ("Rule 408 does apply to situations where the party seeking to introduce evidence of a compromise was not involved in the

---

[10] Thus, defendants' reliance on out-of-circuit case law is unpersuasive. Moreover, Smith v. Martin, No. 5:10-CV-248-D, 2011 WL 3703255, at *6 (E.D.N.C. Aug. 23, 2011), is instructively distinguishable, since the employee in that case provided unsworn statements, and the employer produced adequate and complete records.

original compromise."); Lyondell Chem. Co. v. Occidental Chem. Corp., 608 F.3d 284, 299 (5th Cir. 2010) ("[T]he offering of settlement evidence arising out of a shared factual nexus and bearing directly on present issues of liability between many of the same parties falls within Rule 408's prohibition.").

As such, plaintiff Hamilton's workers' compensation settlement agreement is inadmissible under Federal Rule of Evidence 408, and it cannot be considered for purposes of summary judgment. See Toll Bros., Inc. v. Dryvit Sys., Inc., 432 F.3d 564, 568 (4th Cir. 2005) ("Summary judgment is warranted when the admissible evidence forecasted by the parties demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.") (emphasis added).

Since plaintiffs have established a prima facie case,[11] the burden shifts to defendants to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Mt. Clemens, 328 U.S. at 687–88. First, defendants provide copies of plaintiffs' electronic paystubs, which reveal that plaintiff Dent was paid overtime on 28 occasions (see Paystubs (DE 58-16) at 4, 14-15, 26, 28, 31, 33, 37, 60, 65, 68-69, 72, 77-78, 80, 85-86, 89, 91, 93, 190, 203, 228, 245, 263-

---

[11] Defendants take issue with plaintiffs' failure to provide a calculation of damages in their initial disclosures, and their belated production of plaintiff Dent's paper timesheets. Defendants are not entitled to summary judgment on this basis. See Randolph v. PowerComm Const., Inc., 309 F.R.D. 349, 362 (D. Md. Aug. 21, 2015) ("Randolph II") ("[S]ummary judgment in [defendant's] favor is not the appropriate remedy for failure to provide a damages figure in the disclosures."); Malik v. Falcon Holdings, LLC, 675 F.3d 646, 649–50 (7th Cir. 2012) (denying defendants' motion for summary judgment based on failure to provide calculation of damages disclosures because "if defendants thought that plaintiffs had failed to perform their obligations under the rules, they should have asked the district judge for a sanction before discovery closed rather tha[n] waiting (as they did) until their motion for summary judgment . . . Defendants have not explained how the plaintiffs' delay injured them, so a remedy would have been mild."). This is particularly true in an action involving claims for overtime compensation, where the damage calculation method is well known (multiplying the rate of pay by hours worked), and the FLSA "does not mandate that a plaintiff prove each hour of overtime work with unerring accuracy or certainty." Pforr v. Food Lion, Inc., 851 F.2d 106, 108 (4th Cir. 1988).

264, and 382) and plaintiff Hamilton was paid overtime on 19 occasions (see Paystubs (47-2) at 4-5, 15-16, 24, 29, 32-34, 38, 61, 66, 69-70, 73, and 78-81). Additionally, defendants proffer affidavit of Crenshaw, a former employee of defendants, wherein the affiant testifies that defendants paid him "time and a half for all hours that [he] worked over forty (40) hours in the work week on the correct payday." (Crenshaw Aff. (DE 58-13) ¶¶ 4-5). Defendants also proffer declaration of Burnett, another former employee, who avers that she never heard Jenny Gregory use the term "banking hours." (Burnett Decl. (DE 58-14) at 2). Finally, defendants proffer affidavits of Jenny Gregory and defendant Mark Gregory, wherein the affiants testify that defendant MGRC complies with all wage and hour laws and no one told plaintiffs they could not earn overtime. (Mark Gregory Aff. (DE 58-18) ¶ 8); (Jenny Gregory Aff. (DE 58-17) ¶ 4).

By revealing that defendants compensated plaintiffs at the overtime rate on multiple occasions, the paystubs undercut the reasonableness of plaintiffs' assertion that defendant MGRC did not pay overtime, and create a genuine dispute as to defendants' overtime compensation practices. However, the paystubs cannot serve as conclusive evidence as to the precise amount of work performed by plaintiffs, because defendants admitted that plaintiffs' hours were occasionally adjusted before they were entered into the payroll software. See Mt. Clemens, 328 U.S. at 690 ("[I]t is generally recognized that time clocks do not necessarily record the actual time worked by employees . . . Only when they accurately reflect the period worked can they be used as an appropriate measurement of the hours worked. In this case, however, the evidence fails to indicate that the time clock records did so mirror the working time . . .They thus could not form the sole basis of determining the statutory workweek."); Randolph v. PowerComm Const., Inc., 7 F. Supp. 3d 561, 573 (D. Md. 2014) ("Randolph I")[12] ("[B]y demonstrating that Randolph's Employee

---

[12]    The court adopts this shorthand to distinguish Randolph I from Randolph v. PowerComm Const., Inc., 309 F.R.D. 349 (D. Md. Aug. 21, 2015) ("Randolph II"), which is also cited herein.

Information Report was manipulated by Defendants to provide Randolph with additional compensation in his final pay period, Defendants cast doubt on the trustworthiness of the report itself.").

While conceding that they adjusted plaintiffs' hours before entering them into the computer, defendants deny that they did so to avoid paying overtime compensation. Rather, defendants claim that plaintiffs occasionally had "slack checks" when inclement weather interfered with their roofing endeavors. (Mark Gregory Dep. (DE 52-1) 140:3-13). In those instances, defendants credited plaintiffs with extra hours, and recouped those hours on subsequent paychecks. (Id.). However, contrary to plaintiffs' sworn statements, defendant Mark Gregory testified at his deposition that he compensated plaintiffs at the overtime rate for any hours recouped from pay periods in which plaintiffs worked over 40 hours. (Id. 140:14-21). The parties' dueling averments gives rise to a genuine issue of material fact, specifically a credibility determination, to be resolved by the jury.

Accordingly, defendants' motion for partial summary judgment and plaintiffs' motion for partial summary judgment are denied in this part.[13]

    4.    NCWHA Claims

Plaintiffs' claims under the NCWHA are based upon defendants' failure to pay plaintiffs all earned wages, in violation of N.C. Gen. Stat. § 95-25.6, also known as a "payday" claim. (Compl. (DE 1) ¶¶ 51-52).

The NCWHA sets forth a "payday" claim as follows: "Every employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. §

---

[13] Having found that genuine disputes of material fact preclude summary judgment on whether defendants violated the FLSA, the court does not reach the parties' arguments on the willfulness of any potential violations or whether the good faith defense applies.

95-25.6.  When an employer fails to do so, the employer is liable to the employee in the amount of the unpaid amount plus interest at the legal rate set forth in N.C.G.S. § 24–1 from the date each amount first came due. N.C.G.S. § 95–25.22(a).  For purposes of a payday claim, "wage" "means compensation for labor or services rendered by an employee" and "includes sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." N.C.G.S. § 95–25.2(16).

The NCWHA also sets forth separately an "overtime" pay claim as follows: "Every employer shall pay each employee who works longer than 40 hours in any workweek at a rate of not less than time and one half of the regular rate of pay of the employee for those hours in excess of 40 per week." N.C. Gen. Stat. § 95-25.4.  Finally, it sets forth "exemptions" to such a claim in the context of a plaintiff subject to the FLSA, in pertinent part: "The provisions of [§] 95-25.4 (Overtime) . . . do not apply to: (1) Any person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the [FLSA]." N.C. Gen. Stat. § 95-25.14(a).

Here, plaintiffs cannot premise their NCWHA claims upon any alleged "banking" of overtime pay, as overtime is exempted based upon the plain language of § 95-25.14(a).  Moreover, as stated in more detail herein, plaintiffs cannot premise their NCWHA claims upon any improper lunch deductions, since this theory of recovery was not alleged in their complaint.

Turning to the remaining bases for plaintiffs' NCWHA claims, plaintiff Hamilton claims that he was not paid earned wages in the form of 40 hours of vacation pay.  With respect to these wages, defendants indicate:

> The vacation time was accrued but unused for the year 2017, which was the year in which [plaintiff] Hamilton began his worker's compensation disability.  He remained "on the books" as an employee until Jenny Gregory was advised by the worker's compensation defense lawyer that Hamilton's case was finalized and

18

Hamilton (per the lawyer) said that he was not coming back to work. J. Gregory Dep., p. 267, 11. 6-23. App. Ex. 11. In strict conformity with N.C. Gen. Stat. § 95-25.7 the vacation pay was due "the next regular payday" in May of 2019. In the meantime Defendant had been served with the suit papers in this cause.

Tardy though it may have been, the net work pay and vacation pay were tendered to Hamilton pursuant to N.C. Gen. Stat. § 95-25.7A, through counsel, on November 13, 2019, minus regular withholdings and offset for the debt . . . after Hamilton, under oath, acknowledged his debt to the Company at his deposition. Giving the Defendants latitude not only to get their bearings in a surprise lawsuit but also to obtain Hamilton's sworn acknowledgement that he owed money to the Defendants, the Defendants thus substantially satisfied the obligation to Hamilton under the NCWHA.

(Mem. (DE 45) at 11-12) (parentheses in original). In stating that defendants' payment to plaintiff Hamilton was "tardy", defendants concede that they did not comply with the NCWHA. See N.C. Gen. Stat. § 95-25.7 ("Employees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday either through the regular pay channels or by mail if requested by the employee."). Accordingly, there is no genuine dispute as to their liability under the NCWHA. The payment and related offset made on November 13, 2019, after this litigation commenced, goes to damages, not liability, and is not presently before the court. See Randolph II, 309 F.R.D. at 363 n.11 ("Included in its calculations are payments PowerComm made to Plaintiffs while this lawsuit was pending for the overtime hours worked and not previously paid. These attempted settlements would unlikely be counted as overtime paid when calculating damages."). Plaintiffs' motion for partial summary judgment is granted in this part, and defendants' partial motion for summary judgment is denied in this part.[14]

Plaintiff Dent also argues defendants failed to pay him all wages earned on his regular payday. In support, he points to his paystubs for the period of June 1, 2018, to June 7, 2018, which

---

[14]    Where the parties briefed issues related to liquidated damages under the FLSA and NCWHA together, and where genuine disputes of material fact preclude a ruling on defendants' liability under the FLSA, the court reserves ruling on liquidated damages under the NCWHA until it has ruled upon defendants' potential liability under the FLSA.

indicate that he was paid for 39.75 hours of work.  (See Paystubs (DE 52-5) at 1-2).  Plaintiff Dent then compares those paystubs to his paper timesheets for the same pay period, which indicate that he worked 50.5 hours.  (See Timesheet (DE 52-5) at 4-8.  As such, plaintiff Dent argues that defendants violated the NCWHA by failing to pay him, at his regular rate, for .25 hours work (40 minus 39.75).  Next, comparing his paystubs with his paper timesheets for the pay period June 8, 2018, to June 14, 2018, plaintiff Dent claims that defendants failed to pay him for .25 hours of work during that pay period as well.  (Compare Paystubs (DE 52-6) at 1-3) with (Timesheets (DE 52-6) at 4-7).

At his deposition, however, plaintiff Dent testified that his paper timesheets contained errors.   (See Pl. Dent Dep. (DE 58-12) 52:23-53:3) ("We might not have had the person's name at that point and I never got it or I forgot to put an end time in between, but I put a start time for the next one.  Well, yea, we got done there then, you know, simple mistakes.").   By admitting that he occasionally forgot to write his stop time for certain jobs on the paper timesheets, plaintiff Dent casts doubt on the accuracy of these records.  Moreover, in her affidavit, Jenny Gregory testified that plaintiff Dent never gave her his timesheet for June 6, 2018, and his failure to do so was a "source of much discussion" between Jenny Gregory and plaintiff Dent, (see Jenny Gregory Aff. (DE 58-17) ¶ 16), which calls into question the authenticity of the June 6, 2018, paper timesheet plaintiffs filed in this action.  Where defendants raise genuine issues as to the authenticity and accuracy of plaintiff Dent's paper timesheets, plaintiffs' motion for partial summary judgment is denied in this part.

## CONCLUSION

Based on the foregoing, defendants' motion for partial summary judgment (DE 44) is GRANTED IN PART and DENIED IN PART, and plaintiffs' motion for partial summary

judgment (DE 48) is GRANTED IN PART and DENIED IN PART. In particular, the court GRANTS plaintiffs' motion for partial summary judgment on the issues of defendant Mark Gregory's status as an employer and defendants' liability on plaintiff Hamilton's claim under the NCWHA, and the court grants defendants' motion for partial summary judgment on the issue of whether plaintiffs can pursue their theory of improper lunch deductions. The court denies the parties' motions in remaining part.

Where claims remain for trial, in accordance with case management order entered July 1, 2019, this case now is ripe for entry of an order governing deadlines and procedures for final pretrial conference and trial. The parties are DIRECTED to confer and file within 14 days from the date of this order a joint status report informing of 1) estimated trial length; 2) particular pretrial issues which may require court intervention in advance of trial, if any; and 3) at least three suggested alternative trial dates.

SO ORDERED, this the 15th day of March, 2021.


LOUISE W. FLANAGAN
United States District Judge